**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **ZCT SYSTEMS GROUP, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **FLIGHTSAFETY, INTERNATIONAL,** | ) | |
| | ) | |
| **Defendant,** | ) | |
| | ) | **Case No.: 4:08-cv-447 JHP-PJC** |
| **FLIGHTSAFETY, INTERNATIONAL, INC.,** | ) | |
| | ) | |
| **Counter-Claimant,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **ZCT SYSTEMS GROUP, INC.,** | ) | |
| | ) | |
| **Counter-Defendant.** | ) | |

**FLIGHTSAFETY'S MOTION TO COMPEL PRODUCTION**
**OF DRAFTS OF AGREEMENTS BETWEEN ZCT AND**
**FLIGHTSAFETY AND RELEVANT FINANCIAL DOCUMENTS**

Defendant FlightSafety International, Inc. ("FlightSafety") respectfully moves, pursuant to Fed. R. Civ. P. 37(a), for an order compelling Plaintiff, ZCT Systems Group, Inc. ("ZCT"), to produce relevant discovery.  FlightSafety attempted to resolve this issue without the need for Court intervention, but ZCT continues to refuse to produce relevant responsive documents.[1]  FlightSafety also requests that the Court award FlightSafety its reasonable expenses incurred in connection with this motion, including attorneys' fees, pursuant to

---

[1] Conference between counsel to attempt to resolve the issues in this motion took place in writing and telephonically because the distance between the offices of FlightSafety's counsel handling these issues and ZCT's counsel's offices rendered personal conferences infeasible.  *See* L. Civ. R. 37.1.

Fed. R. Civ. P. 37(a)(5)(A), because ZCT's refusal to produce the requested discovery is not substantially justified.

### INTRODUCTION

ZCT seeks millions of dollars in damages from FlightSafety for the alleged misuse of computer code provided to FlightSafety by ZCT under a series of Software Development Agreements ("Agreements"). All of the Agreements and all drafts of the Agreements were written by ZCT.  [*See* First Amended Complaint (Dkt. 41) ¶¶ 13-28.]

The subjects of this Motion are: 1) ZCT's refusal to produce drafts of the Agreements at issue in this case; and 2) ZCT's refusal to produce financial documents that would permit FlightSafety to challenge ZCT's claimed damages.

### DISCUSSION

### I.    APPLICABLE LEGAL STANDARDS

Fed. R. Civ. P. 26(b)(1) provides for discovery "regarding any matter, not privileged, that is relevant to the claim or defense of any party" or discovery of any information that appears "reasonably calculated to lead to the discovery of admissible evidence."

> At the discovery phase of litigation "relevancy" is broadly construed and a request for discovery should be considered relevant if there is "any possibility" that the information sought may be relevant to the claim or defense of any party.  A discovery request should be allowed "unless it is clear that the information sought can have no possible bearing" on the claim or defense of a party.

*Lindley v. Life Investors Ins. Co. of Am.*, No. 08-CV-379-CVE-PJC, 2009 U.S. Dist. LEXIS 108437, at *7 (N.D. Okla. Nov. 19, 2009) (quoting *Owens v. Sprint/United Mgmt. Co.*, 221 F.R.D. 649, 652 (D. Kan. 2004)).

Fed. R. Civ. P. 26(b)(5) requires that party withholding documents by claiming privilege must "describe the nature of the documents . . . not produced or disclosed—and do so in a manner that . . . will enable other parties to assess the claim."

## II.    ZCT'S FAILURE TO PRODUCE DRAFT AGREEMENTS

### A.    The Drafts of the Agreements are Relevant

FlightSafety is entitled to drafts of the Agreements between FlightSafety and ZCT that are the main focus of ZCT's claims and FlightSafety's defenses. [*See* Dkt 41, ¶¶13-28 (alleging causes of action for breach of contract regarding September 2002 Agreement and January 2004 Agreement).] To the extent the Court may find a provision of the Agreements to be ambiguous, the facts surrounding the negotiation of the agreements, and ZCT's contemporaneous understanding of them, are necessarily relevant to ZCT's claims and FlightSafety's defenses. *See Gamble, Simmons & Co. v. Kerr-McGee Corp.*, 175 F.3d 762, 767 (10th Cir. 1999) ("If the contract is ambiguous, then we may resort to extrinsic evidence, including the subsequent statements and actions of the parties, in order to construe the agreement.") (citing *Pierce Couch Hendrickson Baysinger & Green v. Freede*, 936 P.2d 906, 912 (Okla. 1997)); *see also W. Res., Inc. v. Union Pac. R. Co.*, No. 00-2043-CM, 2001 WL 1718368, at *4-5 (D. Kan. Dec. 5, 2001) (granting motion to compel in breach of contract case and holding that drafts of settlement agreement, negotiation documents, and amendments to contracts were relevant and discoverable).

**B.      FlightSafety's Discovery Requests and ZCT's Claim of Privilege**

On August 11, 2009, FlightSafety specifically requested drafts of the agreements between ZCT and FlightSafety.[2]  On December 21, 2009, ZCT responded: "ZCT will and/or has produced responsive documents to the extent they exist." [Plaintiff's Response to Defendant's First Request for Production of Documents attached as Exhibit 3, at 10 (citing ZCT 001607-001700 consisting of executed agreements).] ZCT's written response did not assert a privilege objection, but reserved the right to do so. [*Id.*] On February 1, 2010, ZCT served its privilege log, but did not identify drafts of the Agreements as documents being withheld on the basis of privilege. [*See,* ZCT's Privilege Log attached as Exhibit 4.]

On March 23, 2010, ZCT's corporate representative testified that there were drafts of the agreements between the parties. [*See,* Letter from J. Schaefer to E. Dorwart (3/24/10), attached as Exhibit 5, at 2.] On March 24, 2010, FlightSafety's counsel requested that ZCT produce all such drafts. [*Id.*] On March 26, 2010, ZCT's counsel claimed that she was not aware of any Request for Production calling for drafts of the agreements.  [*See,* e-mail dated 3/26/10, with letter dated 3/24/10 from E. Dorwart to J. Schaefer, attached as

---

[2]  *See* Defendant's First Req. for Adm., Interr. and Req. for Prod. of Docs. attached as Exhibit 1, at 17 (Req. for Prod. 21 seeking "all documents and communications related in any way [to] the 2002 Agreement and the January 2004 Agreement, including without limitation the following: (a) All versions, drafts, revisions, or comments (e.g. tracked changes, redline changed, handwritten revisions or comments of or to the Agreements) ... ."); *id.* at 18 (Req. for Prod. 22 seeking "all agreements, contracts, and/or letters of understanding or intent between ZCT and FlightSafety other than the 2002 Agreement and the January 2004 Agreement"); *see also id.* at 15 (Req. for Prod. 3 seeking "all documents relating to [ZCT's] answer to Interrogatory No. 3"); Plaintiff's Resp. to Defendant's First Interrs., attached as Exhibit 2 (Resp. to Interr. 3 listing all Agreements between the parties); Ex. 1 at 16  (Req. for Prod. 7 seeking "all documents related to ZCT's response to Interrogatory No. 7"); Ex. 1 at 5 (defining "Document" for purposes of FlightSafety's requests for production to include to "each separate draft or copy of each document by reason of which any variation (e.g., the presence of absence of handwritten notes or underlining) represents a distinct version").

Exhibit 6, at 2.]  On March 27, 2010, FlightSafety's counsel explained that they had in fact been requested, and requested that ZCT produce drafts of the parties' agreements, including those in the possession of ZCT's counsel.  [*See,* Letter from J. Schaefer to E. Dorwart (3/27/10), attached as Exhibit 7.]  On March 27, 2010, ZCT's counsel declined to produce drafts of the agreements.  [*See*, e-mail from E. Dorwart to J. Schaefer (3/27/10), attached as Exhibit 8.]

On April 13, 2010, FlightSafety's counsel attempted to resolve the issue short of court intervention, and ZCT agreed to produce draft agreements.  [*See,* Email from P. DeMuro to J. Schaefer (4/19/10), attached as Exhibit 9, at 2.]  ZCT produced four draft agreements between ZCT and FlightSafety. However, ZCT is asserting privilege over four additional drafts that were attached to communications between ZCT and its counsel, claiming that these drafts were not disclosed outside of the attorney-client relationship. [*See,* e-mail from P. DeMuro to J. Schaefer (4/21/10), attached as Exhibit 10.]  ZCT also made substantial redactions of comments on a draft of the January 26, 1996 Agreement [*see*, draft of Agreement, filed under seal as Exhibit 11]; ownership of the object editor delivered under the 1996 Agreement is a central issue in this case.

### C.    ZCT's Claim of Privilege has been Waived

As an initial matter, ZCT waived any claim of privilege as to the four withheld drafts and the comments redacted from the January 1996 draft by failing to include these documents on its privilege log.  [*See, e.g.*, *Williams v. Sprint/United Mgmt. Co.*, No. 03-2200-JWL-DJW, 2006 WL 3694862, at *3 (D. Kan. Dec. 13, 2006); *see also* Fed. R. Civ. P. 26(b)(5), Advisory Committee Notes ("To withhold materials without such notice is contrary to the rule . . . and may be viewed as a waiver of the privilege or protection."); *see also,* Exhibit 4.]

### D.      ZCT's Claim of Privilege Lacks Merit

Even if ZCT has not waived privilege by failing to include the withheld documents on its privilege log, ZCT "has the burden of *clearly showing*" that the attorney-client privilege or work-product doctrine applies.  *Lindley v. Life Investors Ins. Co. of Am.*, No. 08-CV-379-CVE-PJC, 2010 WL 653022, at *3 (N.D. Okla. Feb. 17, 2010) (Cleary, Magistrate J.) (emphasis added).  Fed. R. Civ. P. 26(b)(5) specifically requires that party withholding documents by claiming privilege must "describe the nature of the documents . . . not produced or disclosed—and do so in a manner that . . . will enable other parties to assess the claim."  It is self-evident that ZCT has not met this burden. As the Court held in *Mold-Masters Ltd. v. Husky Injection Molding Sys. Ltd*., No. 01 C 1576, 2001 U.S. Dist. LEXIS 20152, at *8 & 9 (N.D. Ill. Dec. 5, 2001):

> It should hardly come as a surprise that an attachment to a document must appear as a separate entry on the privilege log.  ...  Courts provide protection against disclosure pursuant to the attorney-client privilege and work-product doctrine on a document-by-document basis.  Since a document with an attachment constitutes two separate documents, a party objecting to the disclosure of a document with an attachment must prove that both the document and the attachment individually satisfy the requirements of the applicable privilege or doctrine.  Merely attaching a document to a privileged or protected document does not make the attached document privileged or protected. [Citations omitted.]

ZCT's contention that the drafts were not disclosed outside of the attorney-client relationship is inadequate to establish attorney-client privilege.  ZCT must individually establish that each draft and each redaction was "(1) [a] communication; (2) that was intended to be confidential, and either; (3) from one seeking legal advice or assistance, and; (4) to one reasonably believed to be an attorney at law, or (3) from an attorney; (4) giving requested legal advice or assistance; (5) which reveals a prior confidential communication from the client."  *Lindley*, 2010 WL 653022, at *7.  Thus, documents prepared by an

attorney that are intended for transmission to a third-party are not privileged.  [*See id.*, at *21 (attorney edits incorporated for disclosure to third parties are not privileged); *Softview Computer Prods. Corp. v. Haworth, Inc.*, No. 97 Civ. 8815 KMWHBP, 2000 WL 351411, at *15 (S.D.N.Y. Mar. 31, 2000) ("Drafts of documents prepared by an attorney for transmission to third parties are protected by the attorney-client privilege only where the draft document contains confidential information communicated by the client to the attorney that is maintained in confidence."); *Messagephone, Inc. v. SVI Sys., Inc.*, No. 3-97-1813 H, 1998 WL 812397, at *2-3  (N.D. Tex. Nov. 18, 1998) ("Draft documents are only privileged to the extent that communications contained therein are not revealed to third parties.").]

ZCT's unsupported assertion that the withheld drafts and redactions were not disclosed outside of the attorney-client relationship, does not satisfy ZCT's burden, as this assertion does not address whether the drafts and redactions were intended to be disclosed to a third-party when authored.  Further, this assertion is undermined by ZCT's corporate representative's testimony that he exchanged drafts of the Agreements with FlightSafety.  [*See,* Deposition of Greg Zumwalt, 3/23/10, filed under seal as Exhibit 12, 239:5-240:25; *see also,* Deposition of Greg Zumwalt, 4/1/10, filed under seal as Exhibit 13, 498:4-24).]  ZCT also has not met its burden of clearly demonstrating that the comments redacted from the 1996 Agreement are privileged.  In *Lindley*, this Court held that counsel's handwritten notes on a draft of a memo were not privileged because they were "simple editing notations and were either incorporated for disclosure to third parties in the Whitlock memo and/or do not contain any confidential information communicated by the client to the attorney that is maintained in confidence."  2010 WL 653022, at *21.  ZCT has not clearly demonstrated that the redactions on the draft 1996 Agreement are anything

more than simple editing notations or that they contain any confidential communications between ZCT and its counsel.

The drafts and redaction are clearly not work product.  The work-product doctrine only protects from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial" or "the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation."  Fed. R. Civ. P. 26(b)(3)(A), (B).  The drafts of the agreements between ZCT and FlightSafety are not protected by the work-product doctrine because they were not prepared in anticipation of litigation or for trial.  They were created in the normal course of ZCT's business with FlightSafety.  *See Lindley*, 2010 WL 653022, at *8 ("Materials assembled in the ordinary course of business or for other non-litigation purposes are not protected by the work product doctrine. The inchoate possibility, or even likely chance of litigation, does not give rise to work product." (internal quotations omitted)).

Accordingly, FlightSafety requests that this Court order ZCT to produce the four withheld drafts and an unredacted copy of the 1996 Agreement.  Alternatively, FlightSafety requests that, at a minimum, the Court conduct an *in camera* inspection of the documents to determine whether the documents are in fact privileged and whether ZCT has waived any privilege by selectively disclosing drafts.[3]  *See Messagephone*, 1998 WL 812397, at *3

---

[3]  Because ZCT is claiming that some drafts are privileged while others are not, FlightSafety cannot determine if ZCT is selectively producing certain drafts while shielding others because they may harm its case. *See Sinclair Oil Corp. v. Texaco, Inc.*, 208 F.R.D. 329, 332 (N.D. Okla. 2002) ("The risk [of selective disclosure] is obvious. A Plaintiff could choose to produce documents which are otherwise protected by the privilege which were beneficial to Plaintiff's case but would decline to produce privileged documents which might benefit the Defendant. To prevent such injustices, Courts have routinely held that the selective disclosure of otherwise privileged documents results in a waiver of the privilege.").

("An *in camera* review of the documents is necessary. Furthermore, it is unclear what portions of the drafts, if any, actually remained confidential. Draft documents are only privileged to the extent that communications contained therein are not revealed to third parties.").

III.   **ZCT'S FAILURE TO PRODUCE FINANCIAL DOCUMENTS**

A.   **ZCT's Refusal to Produce Requested Financial Documents**

On August 11, 2009, FlightSafety requested "all documents related in any way to the marketing, offer for sale or offer to purchase any ZCT Code (or other products related to computer based training, simulation or aviation technology)."   [*See,* Ex. 1 at 18 (Req. for Prod. No. 25); *see also id.* at 16, 11 (Req. for Prod. No. 7 (requesting all documents related to ZCT's response to Interrogatory No. 7, which required ZCT to identify "all efforts by ZCT to market, license or sell such code".]   ZCT served its written response to these requests on December 21, 2009, agreeing to "produce responsive documents to the extent they exist." [Ex. 3 at 7 & 12.]   ZCT understood that financial documents were responsive to these requests.   [*See,* Letter from P. DeMuro to J. Schaefer & D. Hansen (2/9/10), attached as Exhibit 14 ¶ 2 (describing ZCT's partial production of financial documents).]

On February 5, 2010, FlightSafety's and ZCT's counsel met and conferred regarding outstanding discovery issues.   [*See,* Letter from J. Schaefer to P. DeMuro & E. Dorwart (2/8/10), attached as Exhibit 15.]   FlightSafety's counsel specifically raised the issue of ZCT's inadequate production of financial documents, including ZCT's failure to produce both financial documents related to ZCT's sale of computer games containing the graphics engine at issue in this case and ZCT's corporate financial records.   [*Id.*]   ZCT's counsel explained that they did not understand financial documents related to ZCT's sale of

computer games to be within the scope of FlightSafety's document requests, but agreed to gather and produce such documents without a formal request.  [Ex. 14 ¶ 2.]  ZCT's counsel separately agreed to produce ZCT's corporate financial records.  [*Id.* ¶ 3.]

On February 19, 2010, ZCT served a damages expert report containing opinions regarding the value of the code at issue in this case and a hypothetical reasonable royalty for FlightSafety's allegedly unauthorized use of the code.  [*See generally* Stephen Becker Expert Report, filed under seal as Exhibit 16.]

On March 2, 2010, ZCT produced financial documents related to ZCT's sale of computer games, but failed to produce post-1998 corporate financial records even though ZCT's breach of contract claims relate to the 2002 and 2004 Agreements and it seeks damages extending to the present.  [*See,* Letter from J. Mills to J. Schaefer & D. Hansen (3/2/10), attached as Exhibit 17.] The most recent ZCT general ledger produced by ZCT is from October 1998.  [*See,* ZCT 014002-13, filed under seal as Exhibit 18.]  The only ZCT Schedule K-1 produced by ZCT was for the 1994 tax year.  [*See,* ZCT 013059-60, filed under seal as Exhibit 19.]  ZCT did not produce any post-1998 corporate financial documents.

The next day FlightSafety responded to ZCT's inadequate production of financial records by serving a request for production tailored to obtaining financial documents relevant to rebutting the damages claims disclosed in ZCT's February 19, 2010 damages expert report.  [*See,* Defendant's Second Set of Interr. and Req. for Prod. of Docs. to Plaintiff, attached as Exhibit 20, at 9 (Req. for Prod. No. 39 requesting "all documents relating to declarations of dividends, financial statements, financial reports, accounting statements, audits, annual or other periodic reports, or other annual or periodic statements for ZCT").]

On April 2, 2010, ZCT served its written response. Despite having agreed on February 5, 2010 to produce its corporate financial documents, ZCT responded as follows:

> ZCT produced documents pertaining to income to Mr. Zumwalt and/or ZCT related to video games and/or work for Flight Safety International on March 1, 2010 at ZCT-012335 through ZCT-014173. ZCT objects to the production of additional financial information as the request is irrelevant to the litigation and is not reasonably calculated to lead to the discovery of admissible evidence.

[Plaintiff's Resp. to Defendant's Second Set of Interr. and Req. for Prod. of Doc., attached as Exhibit 21, at 7.]

On April 5, 2010, counsel for FlightSafety and ZCT met and conferred regarding ZCT's improper relevance objection. [Ex. 9 at 3.] ZCT's counsel agreed to consider FlightSafety's position regarding the relevance of ZCT's post-1998 financials documents responsive to Request for Production No. 39. [*Id.*] On April 13, 2010, ZCT's counsel agreed to produce additional financial documents before the end of the week. [*Id.*] ZCT did not produce additional financial documents by the end of that week. [*Id.* at 2.] On April 19, 2010, FlightSafety's counsel again contacted ZCT's counsel to request ZCT's post-1998 financial documents. [*Id.*] ZCT's counsel indicated that he expected to produce the additional financial documents by the next day, but again failed to do so. [*Id.* at 1.]

On April 21, 2010, ZCT finally produced check reconciliation statements for its bank accounts [*see, e-*mail from P. DeMuro to J. Schaefer (4/21/10) attached as Exhibit 22], which show funds coming into and leaving ZCT's accounts but do not track categories of income or expenses or permit FlightSafety to determine: (i) ZCT's expenditures to develop the computer code at issue in this case; (ii) the value ZCT assigned to the computer code at issue in this case (or, ZCT's failure to assign a value to such code); (iii) ZCT's financial

health at the time of the alleged infringement by FlightSafety, *i.e.*, at the time the parties would have conducted the hypothetical negotiation resulting in the hypothetical reasonable royalty reflected in ZCT's damage expert report; and (iv) the profit ZCT made developing aircraft models under the 2002 and 2004 Agreements.  ZCT also failed to produce other responsive documents, including ZCT's general ledgers, financial statements and Schedule K-1's.

### B.    ZCT'S Relevance Objection Lacks Merit

ZCT's financial records fall squarely within the liberal "relevancy" standard and should be produced.  ZCT's financials are relevant to rebutting the hypothetical reasonable royalty that ZCT seeks. [*See generally,* Ex. 16.][4] ZCT's financial health at the time FlightSafety's alleged misuse of ZCT computer code began is, therefore, relevant because it probative of the hypothetical royalty the parties would have negotiated.  *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1121 (S.D.N.Y. 1970) ("Where a willing licensor and a willing licensee are negotiating for a royalty, the hypothetical negotiations would not occur in a vacuum of pure logic. They would involve a market place confrontation of the parties, the outcome of which would depend upon such factors as their relative bargaining strength.").  ZCT's financial records, such as ZCT's general ledgers showing expenditures and revenue and Schedule K-1s which reflect ZCT's annual profits or losses, are relevant because they will permit FlightSafety to establish ZCT's financial health

---

[4]   Where there is no existing royalty agreement between the parties, determining a hypothetical reasonable royalty involves determining "the amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement." *Freeman v. Gerber Prods. Co.*, 450 F. Supp. 2d 1248, 1261 (D. Kan. 2006) (explaining that a reasonable royalty "is that to which the plaintiff and the defendant might have agreed during a hypothetical negotiation at the time infringement began").

when the hypothetical negotiation would have occurred.  Further, ZCT's financial records would show the presence or absence of royalties charged to other customers, which is relevant to the determination of a hypothetical reasonable royalty.  *Georgia-Pacific*, 318 F. Supp. at 1120 (listing royalties received for the licensing of the intellectual property at issue as a relevant factor in determining a hypothetical royalty).

ZCT's financials are also relevant to evaluating ZCT's lost business claim.  [*See* Dkt 41 at 5 (seeking actual damages and damages for lost business).] ZCT is making claims for the money it allegedly lost as a result of FlightSafety hiring Aerosim and Tricom to perform work (i.e., programming aircraft models) that ZCT contends was reserved to it under the contracts, as well as the profit that ZCT made on the aircraft models it developed under the 2002 and 2004 Agreements. ZCT's financials bear directly on the profit that ZCT would have made had FlightSafety hired ZCT instead of Aerosim and Tricom. In addition, financial documents showing ZCT had distributed essentially all of its assets to ZCT's founder and sole employee, Greg Zumwalt, and had ceased generating revenue [*see* Ex. 12 69:1-3, 76:9-12; Ex. 13 476:1-3] are relevant to show ZCT had little or no expectation of future income, and that any damages claim for future lost business and income loses is speculative at best.

ZCT's financial records reflecting or permitting a determination of ZCT's expenditures to develop this computer code at issue in this case are also relevant. [*See* Dkt. 41 at 5 (seeking damages for the value of the computer code allegedly misused by FlightSafety).] Likewise, the presence or absence of this computer code as an asset on ZCT's books, and, if present, the value assigned by ZCT, is relevant to ZCT's valuation of this code.

Accordingly, FlightSafety respectfully requests that this Court order ZCT to produce responsive financial documents.

**CONCLUSION**

FlightSafety requests that the Court grant FlightSafety's Motion to Compel and order ZCT to immediately produce: (i) the four drafts of the Agreements between ZCT and FlightSafety that it has withheld, and (ii) an unredacted copy of the draft 1996 Agreement. In the alternative, FlightSafety requests that the Court inspect the withheld drafts and redacted comments *in camera* to assess ZCT's assertion of privilege.

FlightSafety also requests that the Court order ZCT to immediately produce all post-1998 financial records (including ZCT's general ledgers, financial statements and Schedule K-1's) in its possession, custody or control that reflect or permit a determination of: (i) ZCT's expenditures to develop the code at issue in this case; (ii) ZCT's revenue from any source related to the code at issue in this case; (iii) a value assigned by ZCT to the intellectual property in this case; (iv) the profit ZCT earned on the parties 2002 and 2004 Agreements; (v) ZCT's annual profits or losses.

Dated: April 30, 2010.

Respectfully Submitted

/s/ John H. Tucker
JOHN H. TUCKER, OBA #9110
e-mail: jtucker@rhodesokla.com
COLIN H. TUCKER, OBA #16325
e-mail: chtucker@rhodesokla.com
RHODES, HIERONYMUS, JONES, TUCKER &
 GABLE, PLLC
P. O. BOX 21100
Tulsa, OK 74121-1100
Phone:  918-582-1173
Fax:  918-592-3390
-and-
DAVID W. HANSEN
*Admitted Pro Hac Vice*
e-mail: dhansen@skadden.com

JAMES P. SCHAEFER
*Admitted Pro Hac Vice*
james.schaefer@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, CA  94301
Phone:  650-470-4500
Fax:  650-470-4570
-and-
CHARLES W. SCHWARTZ
*Admitted Pro Hac Vice*
e-mail: charles.schwartz@skadden.com
NOELLE M. REED
*Admitted Pro Hac Vice*
e-mail: noelle.reed@skadden.com
CHRISTOPHER J. BELLOTTI
*Admitted Pro Hac Vice*
e-mail: christopher.bellotti@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1000 Louisiana Street, Suite 6800
Houston, TX  77002
Phone: 713-655-5160
Fax:  713-483-9160


## CERTIFICATE OF SERVICE

I certify that on the 30th day of April, 2010, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Frederic Dorwart                          fdorwart@fdlaw.com
Erica Anne Dorwart                        edorwart@fdlaw.com
J. Michael Medina                         mmedina@fdlaw.com
Paul Demuro                               pdemuro@fdlaw.com
FREDERIC DORWART LAWYERS
***Attorneys for ZCT Systems Group, Inc.***
***Plaintiff/Counter Defendant***


/s/ John H. Tucker
_____